STATE OF CONNECTICUT *v.* THEODORE HAWLEY
(AC 27466)

Bishop, Lavine and Peters, Js.

Argued April 19—officially released July 17, 2007

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian J. Leslie*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Theodore Hawley, appeals from the judgment of conviction, rendered after

a jury trial, of two counts of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1) and (5). On appeal, the defendant claims that the trial court improperly (1) refused to give a jury instruction on self-defense despite his request to charge and (2) denied his motion for a judgment of acquittal as to his conviction under § 53a-181 (a) (1). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 1, 2005, the defendant claimed to have been injured when he was arrested in connection with an alleged robbery and was taken to Yale-New Haven Hospital. He was restrained partially on a gurney and under police guard while he was in the emergency room and elsewhere in the hospital. While Daniel Hartman, an emergency room nurse wearing a badge that identified him as such, was transporting the defendant to the X ray waiting room, the defendant uttered the words, "fuck you, leave me alone, let me go, I'm gonna get you." He also directed profanity toward passersby. While the defendant was waiting to be X rayed, he spat on the gurney, the walls, floor, furniture and equipment in the waiting room. Officer Herbert Sharp of the New Haven police department, who was guarding the defendant, informed hospital personnel of the defendant's conduct. They ordered the defendant to stop spitting. When the defendant refused, Hartman attempted to place a surgical mask over the defendant's face, but the defendant promised to bite Hartman, raised his fist and stated, "I will fuck you up." Sharp became concerned for the safety of hospital personnel. Hartman, Sharp and hospital security personnel placed all four of the defendant's extremities in restraints, and Hartman placed the surgical mask over the defendant's face.

Because the defendant refused to cooperate with the X ray technician, no X ray was taken, and the defendant was returned to the emergency room where the

attending physician reexamined and discharged him. In the meantime, the surgical mask had been removed from the defendant's face. About thirty minutes after the mask had been put on the defendant, and subsequently removed, Hartman approached the defendant to give him discharge instructions. The defendant stated to him, "I know where you work, and I'm going to come back for you," "fuck you," and, "I'm gonna fuck you up." Hartman took the defendant's threats seriously because the defendant did not appear to be under the influence of alcohol or drugs. The defendant then collected phlegm in the back of his throat and spat it on Hartman's face. Hartman walked away, immediately washed his hands and face and spoke to a physician about the precautionary measures he should take as a result of the defendant's having spat on him.

The defendant claims that the court improperly failed to give the jury an instruction on self-defense despite his having submitted a request to charge on the issue. "Before the jury is given an instruction on self-defense . . . there must be some evidentiary foundation for it. A jury instruction on self-defense is not available to a defendant merely for the asking. The defendant [is] only . . . entitled to a jury instruction on his theory of self-defense if he . . . present[s] applicable evidence no matter how weak or incredible . . . . However low the evidentiary standard may be, it is nonetheless a threshold the defendant must cross. The defendant may not ask the court to boost him over the sill upon speculation and conjecture." (Internal quotation marks omitted.) *State* v. *Wright*, 77 Conn. App. 80, 89, 822 A.2d 940, cert. denied, 266 Conn. 913, 833 A.2d 466 (2003). The defendant did not testify at trial or otherwise present evidence of self-defense. In the absence of any evidence to support a claim of self-defense, there was no reason for the court to give the requested instruction.

The defendant also claims that the court improperly denied his motion for a judgment of acquittal with respect to § 53a-181 (a) (1) because spitting is not violent behavior and, because he was strapped to the gurney, he could not engage in violent or tumultuous behavior. General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

A court may "look for guidance to the construction given by [our Supreme Court] to identical language contained" in other statutes. *State* v. *Szymkiewicz*, 237 Conn. 613, 618, 678 A.2d 473 (1996). "[T]he language of subdivision (1) of General Statutes § 53a-181a (a) . . . evinces a legislative intent to proscribe conduct which actually involves physical violence or portends imminent physical violence." (Internal quotation marks omitted.) *In re Jeremy M.*, 100 Conn. App. 436, 451, 918 A.2d 944 (2007). "[T]he terms 'fighting' and 'violent' lend an aspect of physicality to the more nebulous terms 'tumultuous' and 'threatening.' Thus, [our Supreme Court] conclude[d] that subdivision (1) of [General Statutes] § 53a-182 (a)[1] prohibits physical fighting, and physically violent, threatening or tumultuous behavior." (Internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 812, 640 A.2d 986 (1994). "Tumultuous" has been defined as "riotous" and "turbulent." *State* v. *Lo Sacco*, 12 Conn. App. 481, 490, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987).

Section "53a-181 (a) (1) does not require proof of actual physical contact on the part of the defendant

---

[1] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ."

with a victim . . . ." *State* v. *Szymkiewicz*, supra, 237 Conn. 620. Spitting itself is a physical act, as it is the application of force to the victim's body. *United States* v. *Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974).[2] "A person is guilty of assault of . . . emergency medical personnel when . . . (5) such person . . . hurls . . . any bodily fluid including, but not limited to . . . saliva at such . . . nurse . . . ." General Statutes § 53a-167c (a).

"[T]he legislature intended the language 'inconvenience, annoyance, or alarm' to be that perceived by a reasonable person operating under contemporary community standards." *State* v. *Indrisano*, supra, 228 Conn. 810. Spitting is an unsanitary act; see *State* v. *Spells*, 76 Conn. App. 67, 85, 818 A.2d 808 (spitting "an abusive, disrespectful and unsanitary act"), cert. denied, 266 Conn. 901, 832 A.2d 67 (2003); highly likely to spread contagious, sometimes deadly, disease. Spitting on another person is almost universally acknowledged as contemptuous and is calculated to incite others to act in retaliation. See *Hitchcock Plaza, Inc.* v. *Clark*, 781 N.Y.S.2d 624, 1 Misc. 3d 906 (A) (2003). The jury, therefore, reasonably could have found that, by spitting on Hartman's face, the defendant engaged in fighting or violent or tumultuous behavior with the intent to cause annoyance, alarm and inconvenience.

The judgment is affirmed.

---

[2] *United States* v. *Frizzi*, supra, 491 F.2d 1231, concerned 18 U.S.C. § 111, the statute conferring federal jurisdiction over prosecutions for assaulting or otherwise impeding certain federal officers in the performance of their duties.

The court in that case stated: "We do not think it could be ruled that spitting in the face is not forcible assault, or, more exactly, a battery falling within the statutory description 'forcibly assaults, resists, opposes, impedes, intimidates or interferes.' Although minor, it is an application of force to the body of the victim, a bodily contact intentionally highly offensive." *United States* v. *Frizzi*, supra, 491 F.2d 1232.