Brady, J.
The plaintiff Luisa F. Benson (“Benson”) brings this action alleging sexual harassment and other unlawful acts on the part of the defendants. The five-count complaint alleges sexual discrimination, harassment, and retaliation in violation of G.L.c. 15 IB and G.L.c. 214, §1C, intentional interference with advantageous contractual relations, assault and battery, and interception of oral communications in violation of G.L.c. 272, §9. Pursuant to Mass.R.Civ.P. 12(b)(6) the defendants now move to partially dismiss Counts II, III, IV, and V of the complaint on the grounds that Benson fails to state a claim upon which relief can be granted. After hearing and for the reasons stated below, the defendants’ partial motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
Benson was employed as a Sales Administrator and Receptionist at the defendant corporations Norwood Dodge Sales Inc. and Norwood Dodge Inc. (individually and collectively, “Dodge”) from August 31, 1998 thru March 31, 1999. In her Verified Complaint, Benson alleges numerous instances of sexually offensive or hostile remarks on the part of the defendants that she claims unreasonably interfered with her employment at Dodge. For purposes of this motion, the court will briefly summarize below the allegations made by Benson against each specific defendant.
A. Dodge
Dodge is a foreign for-profit corporation with a usual place of business in Norwood, Massachusetts. Its principal business is the sale and service of new and used cars to consumers.
Benson alleges that Dodge ratified and acquiesced in all of the sexually oriented acts and behavior of its individual employees and allowed a sexually hostile and intimidating environment to exist at its workplace. Benson further alleges that Dodge willfully and intentionally failed to post the statutorily prescribed sexual harassment notice anywhere on its premises in violation of G.L.c. 15 IB. In her complaint, Benson also asserts that Dodge, by means of video and audio devices installed throughout its premises, knowingly and willfully and without her consent intercepted her oral communications.
B. Robert McDonough
Robert McDonough (“McDonough”) is the President of Dodge. Benson alleges that on March 31, 1999, she answered the phone at her workstation which was located on the Dodge showroom floor. Simultaneous to Benson’s answering the phone, McDonough yelled “That’s for me.” McDonough then proceeded to Benson’s workstation where he engaged in a phone conversation regarding a bachelor party he had attended. During the course of the conversation Me *122 Donough made several sexually offensive comments concerning a male stripper who had performed at the party. Benson alleges that after this incident took place, she realized that her continued and repeated complaints to the Dodge management about sexual harassment had been useless given that McDonough, the President of Dodge, had himself engaged in similar conduct. Benson also alleges that McDonough, along with Dodge’s General Manager K.C. Murphy (“Murphy”), installed the video and audio devices by which her oral communications were intercepted without her consent.[2]
C. K.C. Murphy
Benson alleges that at the end of February 1999, . Murphy instructed her to place an advertisement in a Boston paper for a receptionist. While speaking to Benson concerning the advertisement, Murphy commented “I know we’re not going to get another girl as good looking as you, but she has to be attractive.” Benson further alleges that Murphy, despite her repeated complaints to him about the sexual harassment she was experiencing, failed to take any effective action to end the harassment.[3]
D. Gary Marotta
Gary Marotta (“Marotta”) is Dodge’s General Sales Manager. Benson alleges that on or about February 25, 1999, Marotta told her that he wished he was not married, tapped his crotch area, and said “I wanna be with you.” Marotta then looked at his crotch and said to Benson “See what you do to me?” Benson also alleges that on or about March 10, 1999, Marotta grabbed his belt and pants, stuck his forearm down into his crotch area and said to her “Look how much weight I lost.” Marotta then told Benson “I gotta watch it, now we’re being videotaped and audiotaped.” On other occasions Benson alleges Marotta made comments to her about her body, her sex life and his desire to be with her.[4] Benson also states that she was informed by a coemployee that Marotta had expressed to the co-employee his desire to have sex with Benson.
E.Michael Devonshire
Michael Devonshire (“Devonshire”) is the Sales Manager at Dodge and was Benson’s immediate supervisor during the time of her employment. Benson alleges that on or about March 22, 1999, while standing at her workstation, Devonshire physically backed into Benson and thrust his buttocks into her front pelvic area while continuing to push her backward into the showroom wall despite Benson’s yelling for him to stop. Benson also states that on or about March 31, 1999, while in Benson’s presence, Devonshire made sexually offensive comments to another employee about that employee’s sex life. Benson also alleges that Devonshire frequently made a “meowing” sound in her presence which made her feel humiliated and uncomfortable. Benson further states that when she repeatedly complained to Devonshire about the sexual harassment she was experiencing, he adopted a dismissive attitude towards her and failed to take any action to end the harassment.
F. Warren Herman
Warren Herman (“Herman”) is a Sales Manager at Dodge. Benson alleges that on or about January 25, 1999, Herman came to work wearing a tie shaped like a penis, which he displayed to Benson asking “Luisa have you seen my tie?” Benson states' that she expressed her disgust to Herman and told him to refrain from doing anything like that to her again.
G. Jack Semchecko
Jack Semchecko (“Semchecko”) is the Lot Manager at Dodge. Benson alleges that on or about February 24, 1999, Semchecko grabbed Benson’s buttock when she bent over to retrieve a key. Benson yelled at Semchecko to stay away from her and never touch her again. Benson further alleges that less than a month later, Semchecko came to her workstation and made sexual advances towards her. Benson again told him to get away from her and complained to Murphy that Semchecko was a sexual predator who made her extremely uncomfortable. Despite being suspended by Murphy for thirty days as a result of this incident, Semchecko appeared at work the next day and approached Benson. Benson immediately fled from Semchecko and told all the mangers at Dodge that she did not want Semchecko anywhere near her as she was afraid he might hurt her. Immediately following this incident, Benson statés that she learned a fellow female employee had previously complained about Semchecko’s sexual advances. Benson alleges that no one in Dodge’s management took her complaints against Semchecko seriously and as result, he continued to engage'in harassing and intimidating behavior.
DISCUSSION
For purposes of a motion to dismiss a complaint, the allegations in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). Amotion to dismiss should only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Id.
1. Benson’s Intentional Interference with Advantageous Contractual Relations Claim
Defendant’s McDonough, Murphy, Marotta, Devonshire and Herman seek dismissal of Count II of Benson’s complaint alleging intentional interference with her advantageous contractual relationship with Dodge. These defendants contend that Benson cannot bring this claim against them because they were supervisors acting within the scope of their employment in their employers’ interest and not out of personal malice. Under Massachusetts law, these defendants as Benson’s supervisors were privileged to intentionally interfere with Benson’s advantageous relations *123 with Dodge provided that they did not act out of actual malice. Boothby v. Texon, 414 Mass. 468, 487 (1993). The requisite malice has been defined as “a spiteful malignant purpose, unrelated to the legitimate corporate interest.” Id. Thus, to prevail on her claim Benson must prove that the actions of these defendants were motivated by a malice unrelated to any legitimate interest of Dodge.
“Malice may be shown by the proof of facts from which a reasonable inference of malice may be drawn. The line between a proper inference and unwarranted conjecture is not easily drawn. The answer depends on the evidence in the case and on what the trier of fact may reasonably infer from that evidence.” Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 665 (1981); see also G.S. Enterprises, Inc. v. Falmouth Marine Inc., 410 Mass. 262, 273 (1991) (“The propriety of an actor’s motives in a particular setting necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis”). Here Benson has alleged specific acts of sexual harassment against each of the defendants now moving for dismissal. If proven at trial, these acts could support a reasonable inference of malice towards Benson on the part of these individuals. The moving defendants, therefore, are not entitled to dismissal on Count II of the complaint.
2. Benson’s Assault and Battery Claim A. Statutory Preclusion
All of the defendants move for dismissal on Count III of Benson’s complaint alleging assault and battery on the grounds that the Massachusetts Workers’ Compensation Act provides an exclusive remedy for personal injuries sustained in the course of employment, unless an employee reserves her rights pursuant to G.L.c. 152, §24. Here, the defendants contend that Benson did not reserve her rights pursuant to the statute, and thus, cannot now bring a common-law action for assault and battery.
The Workers’ Compensation Act does not immunize coemployees for intentional torts not related to the interest of the employer. O’Connell v. Chasdi, 400 Mass. 686, 690 (1987); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 218 (1998). Thus, under Massachusetts law, Benson’s assault and battery claim against the defendants would not be barred by the Worker’s Compensation Act if the defendants’ tortious acts occurred outside the scope of their employment or were not in furtherance of the employer’s interest. It is too soon in this proceeding to resolve that issue.
B. Other Contentions
The defendants Dodge, McDonough, Murphy, Marotta and Herman also move to dismiss Count III of the complaint on the grounds that Benson has not alleged sufficient facts to show that they intentionally placed her in immediate apprehension of imminent physical harm or used unjustified force against her.
Benson has not pled sufficient facts to sustain a cause of action for assault and battery against defendants McDonough, Murphy, Marotta or Herman. The tort of assault consists of the intentional creation of an apprehension of immediate physical harm by means of an overt gesture. The apprehension required is that which would put a reasonable person in fear of impending harmful contact. Mere words are not sufficient for the tort of assault, some overt act however insubstantial, is required. Tortious battery consists of the intentional and unjustified use of force upon the person of another however slight. See generally Joseph R. Nolan & Laurie J. Sartorio, Tort Law §12 (1989); Restatement (Second) of Torts §§13-31 (1965).
None of the moving defendants are alleged to have in any way touched Benson and therefore a claim for battery cannot lie against these defendants. Nor on the basis of allegations contained in the complaint does a claim for assault lie. The allegations leveled against McDonough and Murphy consist merely of offensive or harassing words uttered by these two men either directly to Benson or in her presence. McDonough, for example is alleged to have engaged in an offensive conversation regarding a male stripper in Benson’s presence. As for Murphy, he is alleged to have suggested to Benson that any new receptionist hired would not be as attractive as Benson. The remarks of McDonough and Murphy, however, do not constitute an assault because they were unaccompanied by any overt act which would have put Benson in reasonable apprehension of an imminent harmful contact.
Similarly, Benson’s claim against Marotta and Herman also fail. Marotta is alleged to have made sexually offensive and suggestive comments not only to Benson, but also about her to other employees. He is also alleged on two occasions to have made sexually offensive gestures in her presence. However offensive these words and gestures they do not constitute assault because they likewise would not have created a reasonable apprehension on Benson’s part that a harmful contact was imminent. As for the allegation against Herman, it stems from one occasion in which he showed Benson the penis shaped tie he was wearing. Such an act was insufficient to have created the requisite reasonable apprehension to prove assault.[5]
Unlike her claims against the other defendants, Benson has pled sufficient facts in her complaint to sustain a cause of action for assault and battery against Dodge. Benson alleges that the defendants were at all material times acting within the scope of their employment as agents of Dodge when they sexually assaulted and battered her. If this allegation were proven at trial, Dodge as the employer would be liable for these torts if committed by its employees within the scope of their employment and in furtherance of Dodge’s work. Rego v. Thomas Brothers Corp., 340 Mass. 334, 335, (1959); See also Miller v. Federated *124 Department Stores, Inc. 1 Mass.App.Ct. 807, 808 (1973).[6]
3. Benson’s G.L.c. 214, §1C Claim
All of the defendants move to dismiss Count IV of Benson’s complaint alleging sexual harassment in violation of G.L.c. 214, §1C on the grounds that another Massachusetts employment discrimination statute, G.L.c. 15IB, provides Benson’s exclusive remedy for any such harassment. This court agrees.
The Massachusetts Supreme Judicial Court has held that G.L.c. 214, §1C provides an alternative remedy for those who cannot bring a claim under G.L.c. 151B. Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996). As an alternative and not a duplicative remedy, a claim under G.L.c. 214, §1C can only be brought against an employer of fewer than six employees. Green, 422 Mass, at 557. At the motion hearing, both Benson and the defendants stipulated that Dodge employs more than six individuals. Benson’s claim under G.L.c. 214, §1C, is therefore, statutorily barred and the defendants are entitled to dismissal of Count IV of the complaint.
3. Benson’s G.L.c. 272, §99 Claim
The defendants Dodge, McDonough and Murphy move to dismiss Count V of Benson’s complaint alleging interception of oral communications in violation of G.L.c. 272, §99 because they contend it is a criminal statute that does not provide a civil cause of action. This contention is mistaken, however, because the statute, expressly provides a civil cause of action for any person whose privacy or property interests were violated by an impermissible or unauthorized interception of oral or wire communications. G.L.c. 272, §99Q.
Here, Benson has alleged that Dodge, McDonough and Murphy installed video and audio devices throughout the premises of Dodge and knowingly and willfully intercepted without her consent all of her oral communications during her employment. If proved at trial these allegations could amount to a violation of G.L.c. 272, §99Q. The moving defendants are therefore not entitled to dismissal as to Count V of the complaint.
ORDER
For the reasons stated above, the defendants’ partial motion to dismiss as to Counts II and V of the plaintiffs complaint is DENIED. The defendant’s partial motion to dismiss as to Count III of the plaintiff s complaint is ALLOWED as to defendants McDonough, Murphy, Marotta and Herman and DENIED as to defendants Norwood Dodge Sales Inc. and Norwood Dodge Inc. The defendant’s partial motion to dismiss as to Count IV of plaintiffs complaint is ALLOWED.

Benson also alleges that two days after she terminated her employment she telephoned Dodge concerning the status of her paycheck. Her call was eventually transferred to McDonough who took the call on a speakerphone. Benson states that when she realized the conversation was taking place on a speakerphone, she insisted that it be turned off.

Benson alleges that on the one occasion Murphy did take action by suspending Jack Semchecko for thirty days for sexually harassing Benson, Murphy did nothing to enforce this suspension when Semchecko appeared at work the very next day.

The comments Benson alleges Marotta made to her include the following: “You’re such a hottie.” “You have a smoking body.” “You must be wild huh?” “I can imagine what it would be like to be with you. You have the body for it — you European women are hot!”

Benson contends that even if McDonough, Murphy, Marotta and Herman did not themselves commit assault and battery they may still be liable under an agency theory. Benson asks the court, therefore, not to dismiss her claim for assault and battery against these defendants at the pleading stage as discovery may reveal that they did order, or set in motion, the assaults and batteries committed by others. In her complaint, however, Benson has not set forth sufficient facts that even if proven through discovery would show that McDonough, Murphy, Marotta or Herman ordered or set in motion any assault and battery committed by others.

In finding that Benson’s assault and battery claim against Dodge can withstand a motion to dismiss, the court again leaves aside for later determination the issue of whether this cause as action is barred under the worker’s compensation statute.